Elizabeth A. Metzger Attorney for Glades General Hospital
QUESTION:
Is a joint conference meeting of the board of directors and the medical staff's quality assurance committee of the Glades General Hospital to discuss quality assurance and peer review subject to the Government in the Sunshine Law, s. 286.011, F.S.?
SUMMARY:
To the extent a meeting of the board of directors and the medical staff's quality assurance committee deals with carrying out the provisions of ss. 395.0115 and 395.041, F.S., such a meeting would be exempt from the open meetings requirement of s. 286.011, F.S.
Section 286.011(1), F.S., provides:
 All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting. (e.s.)
Section 119.16(1), F.S., further provides:
All meetings of a governing board of a public hospital, as well as all records, books, documents, and papers, shall be open and available to the public in accordance with chapter 119 and s.286.011 unless made confidential or exempt by law. (e.s.)
Thus, the meetings of the board of directors of Glades General Hospital, as the governing board of a public hospital, would be subject to the open meetings requirements of ss. 119.16 and286.011, F.S., unless there is a statutory exemption allowing such meetings to be closed. You state that the subject meeting is a joint conference with the hospital's board of directors and its medical quality assurance committee to discuss quality assurance and peer review.
Section 766.101(2), F.S., requires a "medical review committee" of a hospital or ambulatory surgical center licensed under Ch. 395,[1] to "screen, evaluate, and review the professional and medical competence of applicants to, and members of, medical staff." The "medical review committee" is a committee
[o]f a hospital . . . formed to evaluate and improve the quality of health care rendered by providers of health service or to determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health services in the area . . . .[2]
The investigations, proceedings, and records of a medical review committee are not subject to discovery or introduction into evidence in any civil or administrative action against a provider of professional health services arising out of matters which are the subject of review by the committee.[3] Section766.101(7)(c), F.S., provides that "[m]edical review committee advisory reports provided to the [D]epartment [of Professional Regulation] must remain confidential and are not subject to theprovisions of ss. 119.07 and 286.011 . . . ." (e.s.)
The protection from discovery contained in s. 766.101, F.S., for investigations, proceedings and records of a medical review committee does not extend to make such matters confidential or exempt from disclosure under s. 119.07, F.S., or exempt from the public meetings requirements of s. 286.011, F.S.[4] It has been judicially determined, however, that a person subject to the discovery and evidentiary prohibitions in s. 766.101, F.S., may not use the guise of a public records request to circumvent the prohibitions contained therein.[5]
While the advisory reports generated by a medical review committee and provided to the Department of Professional Regulation are statutorily made confidential and not subject to the provisions of ss. 119.07 and 286.011, F.S., the meetings of such a committee are not generally exempted from the open meeting requirements of s.286.011, F.S.
Section 395.0115, F.S., requires each facility licensed pursuant to Ch. 395, F.S., to provide for peer review of physicians who deliver health care services at the facility. Each facility must develop written, binding procedures by which the peer review will be conducted. The procedures shall include the following:
(a) Mechanism for choosing the membership of the body or bodies that conduct peer review. (b) Adoption of rules of order for the peer review process. (c) Fair review of the case with the physician involved. (d) Mechanism to identify and avoid conflict of interest on the part of the peer review panel members. (e) Recording of agendas and minutes which do not contain confidential material, for review by the Division of Medical Quality Assurance of the Department of Professional Regulation. (f) Review, at least annually, of the peer review procedures by the governing board of the facility. (g) Focus of the peer review process on review of professional practices at the facility to reduce morbidity and mortality and to improve patient care.[6]
If reasonable belief exists that the conduct of a staff member or physician delivering health care services at the facility may constitute grounds for discipline under s. 395.0115, F.S., then a peer review panel shall investigate and determine whether grounds for discipline exist.[7] The governing board of the facility, after considering the recommendation of the peer review panel, shall take appropriate action if a final determination has been made that one or more specified grounds for discipline exist.[8]
Section 395.0115(6), F.S., in relevant part, provides:
The proceedings and records of peer review panels, committees, and governing bodies which relate solely to actions taken in carrying out the provisions of this section shall not under any circumstances be subject to inspection under the provisions of s.119.07(1); nor shall meetings held pursuant to achieving the objectives of such panels, committees, and governing bodies be open to the public under the provisions of chapter 286. . . .
Thus, to the extent a joint meeting of the quality assurance committee and the board of directors relates solely to carrying out the provisions of s. 395.0115, F.S.,[9] to conduct peer review of physicians delivering health care services at the facility, such a meeting would be exempt from the open meetings requirements of s. 286.011, F.S.
A facility licensed pursuant to Ch. 395, F.S., as part of its administrative function, must establish an internal risk management program to: investigate and analyze the frequency and causes of adverse incidents causing injury to patients; develop measures to minimize the risk of injuries to patients; analyze patient grievances relating to patient care and the quality of medical services; and develop a reporting system whereby all health care providers and all agents or employees of the facility have an affirmative duty to report injuries and adverse incidents to a hospital risk manager.[10] The governing board of the facility is responsible for such a program.[11]
Section 395.041(9), F.S., states:
The meetings of the committees and governing board of a licensed facility held solely for the purpose of achieving the objectives of risk management as provided by this section shall not be open to the public under the provisions of chapter 286. The records of such meetings are confidential and exempt from the provisions of s. 119.07(1), except as provided in subsection (8).[12]
It would appear, therefore, that a joint meeting of the board of directors and the quality assurance committee held solely for achieving risk management objectives contained in s. 395.041, F.S., would not be subject to the open meetings requirements of s.286.011, F.S.
Accordingly, to the extent a joint meeting of the board of directors and the quality assurance committee of the Glades General Hospital deals solely with matters considered pursuant to ss. 395.0115 and 395.041, F.S., such meetings are exempt from the open meetings requirements of s. 286.011, F.S.
[1] Section 395.001, F.S., states:
It is the intent of the Legislature to provide for the protection of public health and safety in the establishment, construction, maintenance, and operation of hospitals and ambulatory surgical centers by providing for licensure of same and for the development, establishment, and enforcement of minimum standards with respect thereto.
[2] Section 766.101(1)(a), F.S.
[3] Section 766.101(5), F.S.
[4] See, Gadd v. News-Press Publishing Company, Inc.,412 So.2d 894, 895 (2 D.C.A. Fla., 1982), concluding that neither public policy nor exemption from discovery contained in s. 768.40, F.S. (renumbered as s. 766.101, F.S.), makes matters confidential or exempt for purposes of Ch. 119, F.S.
[5] See, City of Williston v. Roadlander, 425 So.2d 1175, 1177
(1 D.C.A. Fla., 1983) (exemption from discovery of medical review committee notes precludes discovery made under the guise of a public records request by one who has come within the statute's prohibition against discovery in a civil action against a health services provider).
[6] Section 395.0115(2), F.S.
[7] Section 395.0115(3), F.S.